THE PEOPLE OF THE STATE OF NEW YORK ex rel. LOUIS MONGNO, Appellant, *v.* LEWIS E. LAWES, as Warden of Sing Sing Prison, Respondent.

Second Department, January 14, 1929.

*Julius S. Berg,* for the appellant.

*Henry C. Henderson, Deputy Assistant Attorney-General [Albert Ottinger, Attorney-General,* with him on the brief], for the respondent.

KAPPER, J. Relator's petition for a writ of habeas corpus alleges his illegal detention in Sing Sing Prison by the warden thereof " for violation [of] parole."

The warden's return states:

" 2nd. That the said Louis Mongno was received at Sing Sing Prison on the 9th day of April, 1920, and is being detained in said prison by virtue of a final judgment of the County Court of Kings County, on the 7th day of April, 1920, on conviction by Confession of Grand Larceny in the first degree as a first offense, which ordered that the said Louis Mongno be imprisoned in the State Prison for a term of ten years, said sentence imposed by Norman S. Dike, County Judge of Kings County.

" 3rd. That the said Louis Mongno was subsequently released from prison by commutation, compensation and parole on July 26, 1926, and declared delinquent by the Board of Parole on March 17, 1928, and returned thereafter for violating his parole on April 17, 1928."

Annexed to the return is the commitment of the county judge.

The relator traverses the return, asserting that he was sentenced to a definite term of ten years on April 7, 1920; that he was not released under the Parole Law as it existed on April 7, 1920, but was released " by commutation and compensation pursuant to section 243 of the Prison Law, as it existed at the time of the commission of the crime and his sentence; " that the Board of Parole " arbitrarily and capriciously " inflicted parole conditions which were not in pursuance of article 9 of the Prison Law " under which he earned his commutation; " and that " The parole warrant issued for his arrest having been issued pursuant to section 243 of the Prison Law as amended by the Laws of 1921 is an unauthorized warrant and void."

The learned Special Term justice dismissed the writ on the authority of the *Sabatino* case decided by us (*People ex rel. Sabatino* v. *Lawes,* 217 App. Div. 779).

The basis of the appellant's argument is that subjecting him to the " jurisdiction and control " of the Parole Board under the provisions of chapter 567 of the Laws of 1921, which amended section 243 of the Prison Law, constituted an aggravation of his sentence and was, therefore, *ex post facto* and ineffectual to justify the Parole Board in returning him to prison.

Our decision in the *Sabatino Case (supra)* supports the order of the Special Term.

The subsequent litigation in the *Sabatino* case resulting in relator's being discharged was disposed of on the ground that an order of the Special Term sustaining the writ of habeas corpus was a final order, unreversed and not appealed from, and could not be restricted in its operation and effect by conditions imposed by the authorities as against unqualified obedience. (*People ex rel. Sabatino* v. *Jennings*, 221 App. Div. 418; 246 N. Y. 258, 624.)

The record is meagre, and does not set forth the conditions imposed by the Governor upon the relator's release by commutation and compensation; the return informs us only that he was released " by commutation, compensation and parole on July 26, 1926," but subsequently, and on March 17, 1928, was " declared delinquent by the Board of Parole * * * and returned thereafter for violating his parole on April 17, 1928." The traverse raises the point only that as section 243 of the Prison Law in force on April 7, 1920, the date of his sentence, was amended in 1921, such amendment could not relate to him.

Section 243 of the Prison Law (as amd. by Laws of 1916, chap. 358), as it was in 1920, provided: " The Governor shall, in reducing the sentences of convicts not subject to the jurisdiction of the Board of Parole, annex a condition to the effect that if any such convict shall, during the period between the date of his discharge by reason thereof and the date of the expiration of the full term for which he was sentenced, be convicted of any felony, committed in the interval as aforesaid, he shall, in addition to the sentence which may be imposed for such felony and before beginning the service of such sentence be compelled to serve in the prison or penitentiary in which he may be confined for the felony for which he is so convicted, the remainder of the term without commutation which he would have been compelled to serve but for the commutation of his sentence as provided for in this article; but he may, however, earn compensation in reduction of the remainder of such term."

By chapter 567 of the Laws of 1921 this section was amended to read as follows: " The Governor shall, in reducing the sentences of convicts not subject to the jurisdiction of the Board of Parole, annex a condition that such convict shall live and remain at liberty without violating the law, and be subject to the jurisdiction and control of the Board of Parole for State Prisons as provided in article eight hereof, excepting section two hundred and eighteen thereof, and also a condition to the effect that if any such convict shall, * * * " (here follows the remainder of the section as first above quoted).

The relator was given a *straight* sentence of ten years' imprisonment, the commitment showing him to have been previously convicted of

a felony. The jurisdiction vested in the Parole Board upon its creation applied to *first offenders* only. (See Prison Law, §§ 210–219.)

The appellant, after citing the amendment of 1921, admits the validity of the act as applicable to prisoners convicted and sentenced subsequent to its passage, but claims, as already stated, that to apply it to prisoners previously sentenced, as he was, renders the law *ex post facto.*

The Constitution (Art. 4, § 5) provides: " The Governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations, as he may think proper."

In *People ex rel. Presser* v. *Lawes* (221 App. Div. 692) this court, through Mr. Justice RICH, said: " The Governor, by the provisions of the Constitution (Art. 4, § 5), is vested with the power to grant reprieves and commutations after conviction, upon such conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons. By statute (Prison Law, § 242, as amd. by Laws of 1916, chap. 358, and Laws of 1921, chap. 567; since amd. by Laws of 1926, chap. 736) he may in his discretion grant commutation in whole or in part, and the power to say to whom clemency shall be granted is vested exclusively in him. Having the power to grant commutation and to select those to whom it is to be extended, I think he may revoke a commutation, once granted, at any time prior to the actual discharge of the prisoner, which is exactly what has happened in the case at bar."

In *People ex rel. Brackett* v. *Kaiser* (209 App. Div. 722, 724) COCHRANE, P. J., said: " The power of the Governor to grant commutation ' upon such conditions and with such restrictions and limitations, as he may think proper ' is given by the Constitution. (State Const. art. 4, § 5.) Nothing is better settled than that such power also exists at common law and that conditions of any nature may be attached to the exercise of such power provided only such conditions are not illegal, immoral or impossible of performance. (7 Bacon Abr. 412; 4 Black. Comm. 401; *Ex parte Wells*, 18 How. [U. S.] 307; *People* v. *Potter*, 1 Park. Cr. Rep. 47.) In *Fuller* v. *State of Alabama* (45 L. R. A. 502) it was said on the authority of cases there cited: ' It is the settled law that this grant includes power to grant conditional pardons, the condition to be either precedent or subsequent, and of any nature, so long as it is not illegal, immoral, or impossible of performance, and that a breach of the condition avoids and annuls the pardon.' "

The case last cited was approvingly referred to by us in the *Sabatino Case* (*supra*).

The question before us, as I view it, is simple. This relator, a second offender, could only be discharged from prison by expiration of his sentence or by a previous order of the Governor under the Governor's authority to commute. The Prison Law does not require the Governor to do it, but vests the matter wholly " in his discretion " (Prison Law, § 242), and although the Prison Board (which is a board separate and apart from the Parole Board, as to which see Prison Law, § 226, as amd. by Laws of 1916, chap. 358; since amd. by Laws of 1923, chap. 508) may " recommend " to the Governor the amount of commutation which a prisoner may be allowed (Prison Law, § 236), the matter of accepting the recommendation of the Prison Board is wholly within the " discretion " of the Governor, who may " decrease or increase the amount of commutation as recommended by the said Board." (Prison Law, § 237.) Then by section 242 of the Prison Law it is provided: " The Governor, upon the receipt of the report recommending the allowance of diminution of sentences of convicts as provided for in this article, may, in his discretion, allow the same, in whole or in part, as to any or all of such convicts."

Now, what did the amendment to section 243 do? Did it increase the imprisonment so as to make the amendment an *ex post facto* law? The section before amendment simply held over the commuted convict's head the terrors of having his period of liberty wholly obliterated as though he had never been out of prison, if he should transgress by the commission of another felony during the interval of his liberation preceding the expiration of his sentence, in which event he was to serve, before commencing the service of the new sentence, the entire unexpired portion of the original sentence from the date of his conditional liberation. As amended, the Governor was authorized to annex other conditions, in effect that the convict should " live and remain at liberty without violating the law " and, further, " be subject to the jurisdiction and control of the Board of Parole for State Prisons." If the statute had not provided for such conditions at all, can there be any question that the Governor could have imposed them under his constitutional power, provided that the conditions were not " illegal, immoral, or impossible of performance." The statute seems to me to be advisory only, notwithstanding the Governor is mandatorily required to annex these specified conditions of reducing sentences. Nothing in the statute permits the Governor, as a condition, to direct a reincarceration to extend beyond the period of expiration of the original term, excepting where the

person liberated commits a felony, whereupon the period of liberation is to count for naught in the return of the prisoner to prison, he then being required to serve out the unserved portion of the original sentence before commencing to serve the newly imposed sentence. Under his constitutional authority the Governor is empowered to utilize the Parole Board as an agency to aid him in enforcing the terms imposed upon the prisoner as a condition of his liberation. He might, if so minded in the functioning of his power, have invoked the aid of another and different agency. His constitutional power is, in either case, duly exercised.

The order dismissing the writ of habeas corpus should be affirmed.

LAZANSKY, P. J., HAGARTY, SEEGER and SCUDDER, JJ., concur.

Order dismissing writ of habeas corpus affirmed.