THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH ROSS, Appellant, *v.* JOSEPH H. WILSON, as Warden of Great Meadow Prison, Respondent.

Third Department, March 3, 1937.

*Joseph Ross*, appellant, appearing *in pro per.*

*John J. Bennett, Jr., Attorney-General [William G. Healy, Assistant Attorney-General,* of counsel], for the respondent.

HILL, P. J. Relator appeals from an order of the Washington County Court which dismissed a writ of habeas corpus. On February 11, 1921, he was sentenced in the Bronx County Court to the State prison at Sing Sing for a term of twenty years, upon conviction for grand larceny in the first degree as a second offender. Thereafter he was transferred to the Great Meadow Prison. On January 19, 1931, certain officials of the latter prison, acting under the Prison Law (now the Correction Law) recommended to the Governor that relator's sentence be reduced by nine years, six months and twenty-three days, and that he be discharged on June 5, 1931. (At the same time and in the same document recommendations as to five other prisoners were submitted to the Governor.) On March 30, 1931, by commutation, the Governor changed and reduced relator's sentence of twenty years pronounced by the Bronx County Court, so that it expired on June 5, 1931. The wording of the Governor's commutation, in so far as it applied to this reduction, was: "I do hereby reduce the sentence of each of the said convicts as recommended by said board, under the conditions" (the conditions will be discussed later).

The authority of the Governor to commute the sentence of a convict or to grant a pardon is not given him by the Legislature. It comes directly from the People through section 5 of article 4 of the New York State Constitution which is as follows: "The Governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations, as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons."

The Legislature is without power to limit or curtail the exercise of this executive prerogative, but may pass laws "relative to the manner of applying for pardons." Certain sections of the Prison Law and corresponding sections of the Correction Law purport to prescribe conditions, restrictions and limitations in connection with this prerogative which the Constitution says is to be exercised by the Governor under such conditions "as he may think proper." The attempted limitations are ineffective in this regard. (*People*

*ex rel. Atkins* v. *Jennings*, 248 N. Y. 46; *People ex rel. Mongno* v. *Lawes*, 225 App. Div. 193; *People ex rel. Sabatino* v. *Jennings*, 221 id. 418; 246 N. Y. 258; *People ex rel. Presser* v. *Lawes*, 221 App. Div. 692; *People ex rel. Brackett* v. *Kaiser*, 209 id. 722.)

The recital that commutation was given " in pursuance of the provisions of the Prison Law " was only a courteous gesture toward the Legislature, as that body could neither add to nor detract from the explicit grant by the People of the State. The Governor granted the commutation subject to three conditions: (1) " Under the conditions that prior to his release from imprisonment by virtue of this reduction of sentence, he does not offend against the laws of the State or the rules of the prison; " (2) " Under the further condition that such convict shall live and remain at liberty without violating the law, and be subject to the jurisdiction and control of the Board of Parole for State prisons as provided in article eight of the Prison Law,* excepting section two hundred and eighteen thereof," and (3) " Under the further condition that if any convict whose sentence is so reduced shall, during the period between the date of his release by reason of such reduction and the date of the expiration of the full term for which he was sentenced, be convicted of any felony committed in the interval, as aforesaid, he shall, in addition to the sentence which may be imposed for such felony and before beginning the service of such sentence, be compelled to serve in the prison or penitentiary in which he may be confined for the felony for which he is so convicted the remainder of the term without commutation, which he would have been compelled to serve but for the reduction of his sentence, but, he may, however, earn compensation in reduction of the remainder of such term, and provided further that he willingly and efficiently performs the duties assigned to him prior to his discharge." The fact that these conditions are in the form indicated by section 242 of the Correction Law (section 243 until the enactment of chapter 902 of the Laws of 1935) is without significance, as the Legislature could not change the constitutional grant of power. The relator was required to obey the conditions named in the commutation because the Governor so directed, not because of the statutory provision. The return made by the warden recites that relator was released on June 5, 1931, thereby indicating that he did not violate the condition which I have designated (1). Relator's record as stated in the return indicates that he has not committed a felony since his sentence was commuted and, therefore, has

---

\* *Sic.* See Correction Law, art. 8.— [Rep.

not violated the condition which I have designated (3). Concerning the condition designated (2), the warden's return states: "He subsequently violated his parole and was returned to Sing Sing Prison on August 29, 1931, as a parole violator. He was re-paroled August 21, 1933, and declared delinquent as of the same date and returned to Sing Sing Prison October 2, 1933. Upon his return to prison he was charged with 6 years and 27 days forfeited time. He appeared before the Parole Board on February 7, 1935, and was held for his maximum, less compensation, which will be August 17, 1939, allowing 3 months per year compensation."

Relator having been sentenced for a determinate period, no action by the Board of Parole was required in advance of his release. Had the commutation been granted to a prisoner serving an indeterminate sentence and had it only reduced the minimum sentence, action by the Board of Parole would have been necessary. (Correction Law, § 223; Prison Law, § 223; *People ex rel. Cecere* v. *Jennings*, 250 N. Y. 239.)

The Governor's commutation required relator to submit to such control of the Board of Parole as was "provided in article eight of the Prison Law, excepting section two hundred and eighteen thereof." Certain of the sections of that article have no relation to the conditions and, obviously, do not apply. Those which seem to apply have to do with "writing the conditions of his parole" which may be general or special rules to govern particular cases, and may include requirements "that the parolee shall not leave the State without the consent of the Board, that he shall contribute to the support of his dependents, that he shall make restitution for his crime, that he shall abandon evil associates and ways, that he shall carry out the instructions of his parole officer and in general so comport himself as such officers shall determine." (§ 215.) But the Board, by the limitation of the commutation, was expressly denied the right to exercise the functions and powers enumerated in section 218 of the article. I quote that section:

"Board of Parole to act on violations of parole. Whenever there is reasonable cause to believe that a prisoner who has been paroled has violated his parole, the Board of Parole at its next meeting shall declare such prisoner to be delinquent and time owed shall date from such delinquency. The warden of each prison shall promptly notify the Board of Parole of the return of a paroled prisoner charged with violation of his parole. Thereupon, such Board of Parole shall, as soon as practicable, hold a parole court at such prison and consider the case of such parole violator, who shall be given an opportunity to appear personally, but not through counsel or others, before such Board of Parole and explain the

charges made against him. The Board of Parole shall within a reasonable time act upon such charges, and may, if it sees fit, require such prisoner to serve out in prison the balance of the maximum term for which he was originally sentenced calculated from the date of delinquency or such part thereof as it may determine, or impose such punishment as it deems proper, subject to the provisions of the next section."

Thus the Board was and is without power to "hold a parole court" to consider petitioner's delinquency or to act upon a charge against him therefor.

The warden's return states that relator is now held on the 1921 commitment from the Bronx County Court. The sentence under that commitment, as commuted by the Governor, has been fully served, and it furnishes no warrant for detaining relator. He is entitled to an immediate discharge to be subject only to the conditions in the Governor's commutation which I have designated (2) and (3).

The order dismissing relator's writ should be reversed on the law and an order made that the warden release relator.

CRAPSER and HEFFERNAN, JJ., concur; RHODES, J., dissents, with an opinion in which BLISS, J., concurs.

RHODES, J. (dissenting). For the purpose of this proceeding I shall assume that the questions here presented have not been passed upon in any other proceeding affecting relator.

The relator was convicted of the crime of grand larceny, first degree, as a second offense on February 11, 1921, and received a definite sentence of twenty years' imprisonment. Deducting his jail time allowance of forty-six days, his maximum term of imprisonment would continue until December 28, 1940. He had no absolute right to discharge prior to that date. (Former Prison Law, §§ 236, 237, 242, 243; present Correction Law, §§ 235, 236, 241, 242.) Parole is not a right, but a privilege, to be granted or withheld as discretion may impel. (*People ex rel. Cecere* v. *Jennings,* 250 N. Y. 239.)

It is true that the Governor has power under section 5 of article 4 of the Constitution of the State of New York to grant reprieves, commutations and pardons, which power may not be limited by the Legislature, but it is equally true that the Governor may impose limitations and conditions to his release of a prisoner.

In the present case the Governor did impose conditions and by virtue thereof relator was paroled on June 5, 1931. Relator signed a written acceptance of the conditions imposed by the Governor,

such acceptance reciting among other things: " This parole is granted under the conditions as set forth in the commutation granted by the Governor, which provides that I shall live and remain at liberty without violating the law, and be subject to the jurisdiction and control of the Board of Parole, as provided in article eight of the Correction Law."

At the time relator was released section 243 of the Correction Law provided that: " The Governor shall, in reducing the sentences of prisoners not subject to the jurisdiction of a Board of Parole, annex a condition that such prisoner shall live and remain at liberty without violating the law, and be subject to the jurisdiction and control of the Board of Parole for the State Prison from which he is released as provided in article eight hereof, excepting section two hundred and eighteen thereof   *   *   *." (See former Prison Law, § 243; present Correction Law, § 242.)

The relator argues that article 8 of the Correction Law applies only to indeterminate sentences and that, therefore, it has no application to his determinate sentence. The Governor, however, annexed as a condition of his release, which relator accepted, that relator be subject to the jurisdiction and control of the Board of Parole as provided in article 8. The conditions of relator's parole were thus measured by the terms of said article 8. Section 215 of that article provides that the Board of Parole in releasing a prisoner on parole shall specify in writing the conditions of his parole; that a violation of such condition may render the prisoner liable to arrest and reimprisonment; that the Board shall adopt general rules with regard to conditions of parole and their violation, and section 220 of said article 8 provides that no person released on parole shall be discharged from parole prior to the expiration of the full maximum term for which he was sentenced.

Relator argues that the Prison Law and the Correction Law since the date of his sentence and original imprisonment have been amended so as to impose additional conditions and restrictions upon his release, and that it was not within the power of the Legislature to impose such conditional restrictions after his original sentence. However, as above stated, the Governor was not compelled to order the release of relator; in granting such release, he had the right to impose conditions. Relator had the choice of remaining in prison or accepting a release on the proffered terms. His only right to release was by virtue of this action on the part of the Executive, and he accepted his discharge upon those conditions. He has violated those conditions and has properly been retaken and reincarcerated.

The order appealed from denying his release and dismissing the writ of habeas corpus should be affirmed.

BLISS, J., concurs.

Order dismissing petitioner's writ reversed on the law and facts, and the writ sustained, and the relator discharged.