## Case No. 15,557.

### UNITED STATES v. LANCASTER.

[4 Wash. C. C. 64.] [1]

Circuit Court, E. D. Pennsylvania. April Term, 1821.

PENALTIES — REMISSION — INTEREST OF THIRD PARTIES—EMBARGO.

1. The secretary of the treasury may remit not only the interest of the United States, but of individuals, in penalties and forfeitures in certain cases, after suit brought, and before judgment.

2. Quere, if the president of the United States can pardon in such a case, so as to affect the interest of third persons?

3. A pardon of the president of the United States after condemnation, as to all the interest of the United States in the penalty incurred by a violation of the embargo laws, and directing all further proceedings on behalf of the United States to be discontinued, does not remit the interest of the custom house officers in a moiety.

[Cited in Holliday v. People, 5 Gilan, 217; Lapham v. Almy, 13 Allen, 307; In re —— (an attorney), 86 N. Y. 570; Anglea v. Com., 10 Grat. 699.]

[Appeal from the district·court of the United States for the district of Pennsylvania.]

This is an action of debt upon a bond dated the 2d of February, 1809, in the penalty of $4.002. The case agreed states that in 1808 the brig Eliza was seized by the collector of the Delaware district, and libelled for violations of the embargo laws · passed in that year. Upon the claim of the defendant · in error, the vessel was restored at the appraised value of $2,001, on bond and security given, with condition to respond for the said value in the event of condemnation. The district court acquitted the vessel, which decree was affirmed upon appeal to the circuit court. [Unreported.] But this decree was reversed by the supreme court in 1813 [unreported], and in June, 1816, sentence of condemnation passed in the circuit court. On the 5th of July. 1816, the defendant petitioned the secretary of the treasury for a remission of the forfeiture; and on the 16th of August, in the same year that officer remitted to the defendant all the right, claim, and demand of the United States, and of all others whatsoever, to the forfeiture by him incurred, so far as respects the bond in the petition mentioned, on payment of costs. On the 24th of September, 1816, suit was brought on this bond, and, on the further petition of the defendant, the president remitted to the defendant all the right and interest of the United States in and to said bond, and required all proceedings on the part of the United States to be forthwith discontinued. The remission is dated the 25th of April, 1817. The counsel agree that the above matters shall be considered as brought out by a plea and a replication, stating the vested rights of the collector

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

and other officers of the customs to a moiety of the forfeiture, and praying judgment to the amount of their interest or moiety; and the defendant to be considered as having demurred to said replication, so as to submit to the court the question whether, notwithstanding the remissions, judgment and execution in this suit may be had for the moiety of the forfeiture aforesaid.

For the United States were cited the following cases: Taber v. Perrot [Case No. 13,-721]; [Jones v. Shore's Ex'r] 1 Wheat. [14 U. S.] 470; The Mars [Case No. 9,106]; [Van Ness v. Buel] 4 Wheat. [17 U. S.] 74; [The Caledonian] Id. 100; [The Josefa Segunda] 5 Wheat. [18 U. S.] 338, 2 Bay, 565.

For defendant: Ex parte Marquand [Case No. 9,100]; United States v. Mann [Id. 15,-718].

C. J. Ingersoll, for the United States.
Mr. Rawle, for defendant.

WASHINGTON, Circuit Justice. This is a writ of error from a pro forma judgment of the district court. The remission of the secretary of the treasury bears date the 23d of August, 1816. It recites the petition of the defendant, touching a certain forfeiture incurred under the first embargo law and the act supplementary thereto, and then proceeds to remit to the petitioner all the claim and demand of the United States as stated in the case. The petition on which the above demand is founded states that, upon the sailing of the vessel, the petitioner, together with two other persons, Turly and Maginnis, in conformity to law for that purpose, entered into a bond to the United States in the sum of $75,000; that the landing of the cargo at Havana being considered as a forfeiture of said bond, a suit was brought thereon against the three obligors, and a judgment for the whole amount thereof was obtained in May, 1811. The pardon of the president of the United States, bearing date the 25th of April, 1817, recites that on a preceding day in that month he had remitted to the defendant all the claim of the United States in and to the penalty of a certain bond, incurred by him and others for an infraction of the embargo law; and further, that it being made known to him that proceedings are still pending against said Lancaster on a bond given for the appraised value of the Eliza, which was forfeited in consequence of the said violation, proceeds to remit all the interest of the United States in, and claim to the penalty or forfeiture of said bond, for the appraised value of said brig, so far forth as the said Lancaster is concerned therein, willing and requiring all further proceedings in the case, on behalf of the United States, to be forthwith discontinued and discharged. The declaration is on the bond for the appraised value of the vessel, and, after setting out the condition, it appears that, upon the appeal to the circuit

court, that court decreed condemnation of the said vessel; yet that the defendant had not paid, &c.

I put out of the case the remission of the secretary of the treasury, which was confined exclusively to the embargo bond in the penalty of $75,000; that being the only bond mentioned in the petition. I also exclude from the case the president's pardon, recited in that of the 25th of April, 1817, because that too is confined to the embargo bond. The question then is, whether the pardon of the president, remitting the interest of the United States in and to the penalty or forfeiture of the bond, on which this action is founded, can effect the moiety of the penalty claimed by the officers of the customs? According to the doctrine of the common law of England, the king cannot, in the exercise of his prerogative of pardon, defeat a legal interest or benefit vested in a subject; as, for example, an interest or right of action given by statute to the party grieved, or even a popular action, after suit commenced. 5 Bac. Abr. 286, 287; Chit. Cr. Law, 742, 764; 3 Inst. 240, 241; 12 Coke, 29, 30. How far this doctrine is applicable to the constitutional power of the president of the United States, has not, I think, been decided, either in the supreme court of the United States, or in any of the circuit courts. In the case of Jones v. Shore's Ex'rs, 1 Wheat. [14 U. S.] 670, and Van Ness v. Buel, 4 Wheat. [19 U. S.] 74, it is stated by the judge who delivered the unanimous opinion of the court that, by the common law, a party entitled to a share of the thing forfeited acquires, by the seizure, an inchoate right, which is consummated by condemnation; and that, when so consummated, it relates back to the seizure; that the same rule applies to personal penalties only; that the right of an individual to a part of the forfeiture in rem attaches on seizure, and to personal penalties on suit brought; which right, in both cases, is rendered indefeasible by the judgment or sentence. But this case does not decide the question whether the president can, by his pardon, defeat the inchoate right of a private person, in a case where the remedy for the recovery of the penalty or forfeiture can be prosecuted only by and in the name of the United States. In such a case may not the president direct the law officer of the government to discontinue the suit? And if the remedy be within the control of that branch of the government which possesses also the pardoning power, would not the inchoate right of an individual be necessarily so? That the power of remission vested in the secretary of the treasury extends to such a case, and that, where so exercised, the interest of an individual in the penalty, not consummated by judgment, may be defeated, is unquestionable. The act of the 3d of March, 1797 (2 Bior. & D. Laws, 361, 585 [1 Stat. 506]), authorizes that officer to mitigate or remit all fines, penalties, or forfeitures arising under the embargo laws, and in

many other cases; and further, to direct the prosecution. if any have been instituted, for the recovery thereof, to cease and' be discontinued. on such terms as he may deem reasonable; and the third section provides that nothing in the said act shall be so construed as to affect the right of any person to that part of any penalty or forfeiture, which he may be entitled to, by virtue of the said laws, in cases where the prosecution has been commenced, or information given before the passing of that act, or any other act, relative to the mitigation or remission of such penalties and forfeitures. From this it is apparent that congress considered this proviso necessary to save the inchoate right of individuals, which had previously accrued, from the effect which a treasury remission would otherwise have had upon them.

It certainly does not follow from this that the pardoning power of the president extends to the barring of private inchoate interests; because he derives his prerogative to pardon under the constitution, and its extent must be tested by that instrument. Those of the secretary of the treasury arise out of legislative provisions; and in respect to the rights of collectors and others to a part of the penalties, cujus est dare, ejus est disponere. Without, then. giving any opinion as to the power of the president to remit, and thus to defeat the inchoate rights of individuals to penalties and forfeitures, and admitting, for the present, that he possesses such a power, I proceed to inquire whether he has in fact exercised it in the present instance. The instrument which grants the pardon, after reciting that proceedings are still pending against Lancaster. on the bond given for the appraised value of the vessel, proceeds to remit all the interest of the United States in, and claim to, the penalty or forfeiture. so forth as it concerns the said Lancaster. Now what was the interest and claim of the United States in and to this penalty? Clearly, to no more than a moiety. The eighty-ninth and ninety-first sections of the duty law (2 Bior. & D. Laws, c. 128 [1 Stat. 695]), to which the embargo law refers, directs the collector to receive from the court or officer the sum recovered, and to pay one moiety of what may remain, after charges deducted, into the treasury, for the benefit of the United States. and to distribute the balance amongst certain officers of the customs, where there is no other informer. It is true that the rights of those officers to the other moiety are inchoate until judgment; but still the United States never had, for a moment, an interest in, or claim to that moiety; and consequently a remission of it cannot by fair construction be included under expressions applicable only to the interest and claim of the United States. If the president. willing to release the claim of the United States, was, nevertheless, indisposed to extend his mercy to the injury of private interest. I am at a loss to conceive in what more appropriate language he could have ex-

pressed such his will. It is true that he directs all further proceedings to be discontinued. But here again he proceeds with studied caution, requiring, not that the action should be discontinued, but the proceedings in the case on behalf of the United States; which may fairly be construed, in connexion with the clause of remission, which is confined to the claim of the United States, to mean so far forth as the United States are concerned; thus observing a proper correspondence between the right and the remedy. This construction is warranted by the rules of the common law, which lay it down that no pardon shall be carried beyond the express purport of it. 5 Bac. Abr. 291; 6 Coke, 13. Thus, a pardon of three persons of all felonies by them committed, without adding "or either of them," is void. as it supposes them guilty jointly, whereas all felonies are several. 5 Bac. Abr. 293 But this rule must apply, a fortiori, to a case when an interpretation carried beyond the plain expressions of the pardon would interfere with and defeat the rights of third persons, though not then actually consummated.

I am therefore of opinion that the interest of the custom house officers in a moiety of this penalty is not remitted or affected by the pardon of the 25th of April, 1817. And proceeding upon the agreement of the counsel to waive all formal objections, I shall give judgment for the penalty of the bond, to be discharged, by the payment of a moiety of the sum mentioned in the condition to be paid to the collector of the Delaware district, for the benefit of the officers of the customs entitled to the same.