Summers, J.
At the May term. 1892, of this court the said OharlesA. Palmer was found guilty of misconduct in office and unprofessional conduct involving moral turpitude, and upon this finding a judgment was entered removing him from his office of attorney and counselor at law.
At the November term 1894 a motion to reinstate him was overruled. 9 O. C. 0. 55, 72.
The grounds of the present motion are the following:
“That the said Charles A.Palmer has already been severely punished for any misconduct of which he may have been guilty, and his life and conduct since his disbarment have been such as to give assurance that by his restoration to the bar, no harm to the public or reproach to the bar would arise: and his restoration will not be incompatible with a proper respect of the court for itself and a proper regard for the dignity of the profession.”
In ex parte Burr, 9 Wheat., 529, Marshall C. J. said;
“The profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend upon its exercise. The right to exercise it ought not to be lightly or capriciously taken from bim.”
“Admission as an attorney is not obtained without years of labor and study. The office which the party thus acquires is one of value, and often becomes the source of great honor and emolument to its possessor. To most persons who enter the profession it is the means of support to themselves and their families. To deprive one of an office of this character would often be to decree poverty to himself and destitution to his family. A removal from the bar should therefore, never be decreed where any punishment less severe — such as reprimand, temporary suspension, or fine^ — 'Would accomplish the end desired.”
Weeks on Attorneys at Law, 158, citing Bradley v. Fisher, 13 Wall, 356, Ex parte Bradley 7 Wall 364.
*96 Considerations such as these,and a high regard for those eminent members of the bar in this and other counties who either favor the reinstatement of Mr. Palmer or so lightly regard their duty in the premises that they find it easier to permit themselves to be placed in that light before the court than to remain silent, have induced us to hold this matter under consideration for many weeks, not merely to leave no room for a suspicion of hasty judgment, but in order that we might,if possible,after mature deliberation, reconcile an order suspending the judgment in the case, during good behavior, with our sense of the duty devolved upon us by law.
The case now made is not materially different from that on the former motion, nor are the reasons assigned materially different. It must be therefore that the only excuse for the present application is the fact that there has been a ■change in the personnel of the court. A careful reading •of the opinion on the decision of the former motion discloses ■nothing in the statement of the law governing the case to which we dissent.
Since the former hearing, Mrs. Palmer has obtained a divorce from her husband, so that he now has no family dependent upon him for support, and most of the' testimony in that case was before us upon his appeal from the order as to alimony. The former hearing was upon affidavits; the present the court required to be upon the depositions or •oral testimony of witnesses,and appointed counsel to represent the interests of the state.
The testimony is to the effect that Mr. Palmer since his ■disbarment has been industrious; that he has been upright in his dealings, and that he has so conducted himself that in the opinion of the witness he could be safely reinstated in his profession; and his own testimony as to his efforts to make a living and his want of success by reason of the discredit which a knowledge of his disbarment brings upon ¡him,
*97 As to the first ground of the motion,it is sufficient to say that removal from the office of attorney at law is not for tbe purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. Disbarment because of the commission of crime does not exempt from indictment, nor is punishment for the offense or pardon a bar to removal from office.
As to the second branch of the motion. A good moral character, as well as a competent knowledge of the law and sufficient general learning, is a necessary qualification for admission to the bar, and where an attorney has been removed from his office for his unprofessional conduct showing the loss of such a character,he should not be reinstated if the court,with all the facts before it, would not in the first instance admit to practice a man with such character.
That these are correct statements of the law will appear, and the duty of the court as well, from the following extracts from cases selected from a much larger number examined,
In Ex parte Wall, 107 U. S., 265, 288, Mr. Justice Bradley says:
“Removal from office for an indictable offense is no bar to an indictment. The proceeding is in its nature civil, and collateral to any criminal prosecution by indictment. The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them.”
In Penobscot Bar v. Kimball, 64 Me. 140, the court held:
“The statute makes a-good moral character a prerequisite of admission to the bar, and when an attorney at law has forfeited his claim to such character by such misconduct, professional or non-professional, in or out of court, as renders him unworthy to associate with gentlemen and unfit and unsafe to be entrusted with the powers, duties and responsibilities of the legal profession, the court may deprive *98 him of the power and opportunity to do further injury under the color of his profession by removing him from the bar.
“By admitting the respondent to the bar the court held him out to the public as worthy of confidence and patronage in the line of his profession. In view of the power of removal vested in the court, to allow the respondent to continue to exercise his profession after he has been thus proved to be unworthy of his office, would be indirectly to involve the court in the responsibility of his acts. And further, after the disclosures in this case, the court cannot forbear to pronounce the judgment of removal from office against the respondent without abdicating the high trust which the law confides to it in this behalf, and rendering that a nullity.
“The respondent has been pardoned for the forgery of which he was convicted and for which he was confined in the state prison; but the instrument forged was a deposition used in a cause before this court; and though the pardon purged him of the offense of which he was convicted, it did not affect the crime of the violation of his professional oath and duty, nor relieve him from the penalty of removal from the bar for this misconduct.”
And in the opinion, Dickerson J. says: (154)
“The evidence discloses not merely a single instance of moral delinquency, disreputable practice and professional misconduct, but a series of them, showing the respondent to be unfit and unsafe to be intrusted with the powers, duties and responsibilities of the legal profession. No court would fot a moment consider the claims of an applicant for admission to the bar who should be shown to possess such a moral character. If the violation of his oath of office, fraud upon the court, bad faith toward clients, dishonesty in his dealings as an individual, and disregard of the courtesies and proprieties due to the other members of the profession should operate a forfeiture of the office of an attorney, the respondent has no longer any claim or right to enjoy that office.
“Unpleasant as is the duty, grave as is the responsibility devolved upon us, and serious as must be the consequences to the respondent, we cannot forbear to pronounce the extreme judgment of removal without failing to discharge the
*99 high trust which the law reposes in us, and which is indispensable to the maintenance of the dignity of the bench, the integrity of the bar, and the purity of the administration ■of justice. Indeed, to refuse to do so in this .case, would be virtually to abdicate this trust,and render the law creating it -a nullity. The guaranty which the law in this behalf provides for the security of the public must be maintained inviolate. ’ ’
And Whipple, 0. J., remarks as follows, Mills’ case, 1 Mann., 398:
“Should this court, after being officially advised that ■one of its officers has forfeited the good name he possessed when permitted to assume the duties of his office, still hold him out to the world as worthy of confidence, they would in my opinion fail in the performance of a duty cast upon them by the law. It is a duty they owe to themselves, to the bar and to the public, to see that a power which may be wielded for good or for evil, is not entrusted to incompetent or dishonest hands. The extreme judgment of expulsion is not intended as a punishment inflicted upon the individual, but as a measure necessary to the protection of the public, who have a right to demand of us that no person shall be permitted to aid in the administration of justice whose character is tainted with corruption.”
Again, Dickerson J., says (Ibid 146):
“If ‘a good moral character’ is indispensable to entitle one to admission to the bar, it is obvious that the necessity for its continuance becomes enhanced by the conflicts, excitements and temptations to which the practitioner is •daily liable. ”
And Bigelow, 0. J.,in Randall, petitioner for mandamus, 11 Allen 473, 480, says:
‘ ‘Nor can a judgment of removal be properly and technically considered as a punishment for a crime or offense. In Ex parte Brounshall, Oowp., 829, Lord Mansfield said: ‘To strike an attorney from the roll’ is not in the nature •ofaa punishment; it is done ‘because he is an unfit per *100 son to practice as an attorneythe court exercise their discretion whether a man, whom they formerly admitted to the bar, is a proper person to be continued in the roll. ’ The more reasonable inference is that the power of removal was given, (by the legislature), not as a mode of inflicting a punishment for ah offense, but in order to enable the courts to prevent the scandal and reproach which should be occasioned to the administration of the law, by the continuance in office of those who had violated their oaths or abused their trust,and to take away from such persons the power and opportunity of injuring others by further acts of misconduct and malpractice.”
Oassody, J. In re 0 — , 73 Wis. 602, 613, says:
“The chief object of this proceeding is not to punish the respondent, but to protect the public from imposition. An attorney bears with him the certificate of the court that he is of good moral character and a fit personto be trusted with the delicate and responsible duties of a member of the legal profession. This certificate the public has a right to rely upon, and to presume its holder to be a person of integrity and honor. Hence, when it has been made to appear that he has been guilty of acts which show him to be so deficient in honesty as to be unworthy of confidence, it is the duty of the court to withdraw its certificate. We owe this duty alike to the public and to the bar.
“By admitting an attorney to the bar, the court presents him to the public as worthy of its confidence in all his professional duties and relations, and if afterwards it comes to the knowledge of the court that he has become unworthy, it is its duty to withdraw that endorsement, and thereby cease to hold him out to the public as worthy of professional employment.” * * * “The power of removal for just cause is as necessary as that of admission for a due administration of law.” In re Samuel Davis, 93 Pa. St. 116.
“In proceedings to disbar an attorney on the ground that he had been convicted of a felony, the court may, even if he has been pardoned, take into consideration his conduct in commiting the crime, and estimate his character and fitness to practice law therefrom, to have property and interests of clients in his hands,and to hold himself out as an accredited officer of the courts.” In the Matter of - an Attorney, 86 N. Y. 563.
*101 “In as much aB good moral chaarcter is one of the qualifications essential to the admission of an attorney, he may be disbarred whenever he ceases to possess such qualification.” Percy's Case, 36 N, Y. 651.
In Rice v. Commonwealth, 18 B, Monroe, Simpson,fJ., says:
“All courts have the power to control and regulate to a certain extent, the conduct of their officers, and to inflict on them for their official misconduct such punishment as the law prescribes. If a court have knowledge of the exist - ance of such official misconduct on the part of any of its officer's, it not only has the power, but it is its duty, to institute an appropriate proceeding against the offender, and to bring him, if guilty, to condign punishment. And it is 'much to be regretted that this duty, which the law devolves upon the courts of the country, is so little regarded, and that the obligations which it imposes are so frequently overlooked or neglected.
“It would be unjust to the profession, the purity and integrity of which it is the duty of all courts to preservé, and a disregard of the public welfare, to permit an attorney who has forfeited his right to public confidence to continue the practice of his profession ” State v. McClaugherty, 33 W. Va., 250.
“The conclusion is painful,but imperative. Too much is staked upon the honesty and good conduct of lawyers for courts to wink at flagrant misconduct. They are trusted by the community with the care of their lives, liberty and property, with no other security than personal honor and integrity. It behooves the courts and the profession to see that their brotherhood keeps clean records. ” In re Henderson, 88 Tenn., 531.
In Kilbourn v. Hand, 9 Ohio, 42, Lane, C. J. says:
“The relation of attorney and client is a necessary one in every country whose civilization is in any degree advanced. The discharge of professional duties demands great and unreserved confidence from the client, and the connection of the attorney with courts, and his access to papers, require unsuspected integrity. Hence general honesty and fidelity to clients, is not only necessary to his success, but even to the *102 ¡performance of his duties. Other good qualities may be wanting in his character, and some vices may be present, but these are the essential virtues of his calling, no more to be' dispensed with than courage in a soldier, or modesty in a woman. The statute regulating admission to the bar, requires the court to be satisfied that the applicant possesses these qualities. The public have a right to presume that ■the court are fully satisfied upon these points, and to regard a license to practice as a certificate of good character from them. And whenever the court shall become persuaded that an attorney has lost these qualifications, essential to his usefulness, and necessary to the safety of his employers, thev are wanting in their duties if they do not take away his means, and destroy his opportunities for mischievous action.”
This qualification is not merely statutory, but is inherent in the very nature of the profession, and always and everywhere has been regarded as essential. Sir Walter Scott, •who was well qualified to speak, says: in “The Antiquary:”
“But I was going to say that in a profession where unbounded trust is necessarily reposed, there is nothing surprising that fools should neglect it in their idleness, and ■tricksters abuse it in their knavery. But it is the more to the honor of those, and I will vouch for many, who unite integrity with skill and attention, and walk honorably upright where there are so many pitfalls and stumbling-blocks for those of a different character. To such men their fellow •citizens may safely intrust the care of protecting their patrimonial rights, and their country the more sacred charge •of her laws and privileges.”
What,then,is this good moral chaarcter which is soessen-. tial to membership in the profession? It is the man himself, aside from his attainments and reputation. “Character lives in a man, reputation outside of him.” Mr. Palmer, by his conduct since his disbarment, may have acquired ■among new acquaintances the reputation of a good moral ■character, but this cannot be accepted as conclusive evidence of his having such a character when the court is in possession of facts wiiich reveal a different character.
*103 In the matter of - an attorney, 86 N. Y. 563, 575, Folger, C. J. says:
"‘We do not lose sight of the very numerously and respectably signed certificate that was presented to the General Term. It doubtless was considered by the General' Term as it has been by us. It shows in that community a general public sympathy with the appellant. * * * * The-certificate presented to the General Term does not assert ¡a fair,moral and professional reputation of the appellant since' the prosecution of him for forgery. It expresses, however,ah opinion that he is a proper and competent person to practicb' law, and that the signers have general confidence in his integrity. That is tantamount to having a good reputation, lit-is a weighty testimonial in his favor. It had its effect upon the mind of the General Term without doubt, but not enouglpto counteract that of the facts that were shown. The General Term was bound to form an opinion of its own. It could not ignore facts because of the counter opinion of ever so many men of respectability and standing. They spoke-to what the community thought of him, notwithstanding: those facts, if indeed the community full) knew of them, and how it felt toward him; that is, it .spoke to his reputation. The facts spoke of his impulses to action; that is, to1 his character, what was at work within him, and might aC any time impel him to action.”
There is no numerously and respectably signed certificate-in this case, nor do we know whether there is in the community a general public sympathy with the applicant, nor is it important, for neither could relieve the court of its responsibility; but what the eminent judge there says,applies with especial aptness to the testimony of those who merely give expression to their opinion.
If Mr. Palmer was an applicant to this court for admission to the-bar, we could not, with the facts of his past’ life which are before us, without shirking the duty imposed upon us, admit him,for want of one of the necessary qualifications. Even the good reputation to which his new acquaintances testify cannot have taken very deep root, for he him *104 self, in bis testimony, attributes his failure to succeed in a business in which unbounded trust is not necessarily reposed, to the fact that information of his disbarment followed him. The fact that Mr. Palmer has not defrauded any one since his disbarment can hardly be taken as any assurance that he would not again yield to the opportunities and temptations that might arise in the practice of the profession. On cross-examination, when pressed to answer whether he had ever offered to make such small restitution as was in his power, his readiness to charge counsel with an offer to betray the trust reposed in him by the court if he, the witness, would make restitution to counsel’s clients, does not comport with a change of character. Nor does his omission to offer what restitution is in his power. The King in Hamlet says:
Joseph Hidy, for applicant.
J, N. Van Deman, for state.
“My fault is past. But, O what form of prayer Can serve my turn? Forgive me my foul murder 1'hat cannot be; since I am still possess’d Of those effects for which I did the murder, My crown, mine own ambition, and my queen. May one be pardoned, and retain the offense9
It may be that the applicant has learned by sad experience that honesty is the best policy, and that he would not disappoint the good opinion of those who would entrust him with the privileges of the profession; but the law does not authorize us to accept any less assurance than a good moral character.
The motion is overruled.