## ROBERTS v. STATE.

(Supreme Court, Appellate Division, Third Department.   May 4, 1898.)

1. PARDON OF CONVICT—EFFECT.
   A pardon of a convict does not have the retroactive effect of determining that the judgment of conviction was erroneous or unjust, or that his imprisonment thereunder was unlawful; nor does it give him a right to sue the state or any one else for damages for his imprisonment.

2. CONSTITUTIONAL LAW—EXERCISE OF JUDICIAL FUNCTIONS.
   Claimant had been convicted of burglary by a court of competent jurisdiction, and no appeal therefrom had ever been taken.   After imprisonment for two years, he had been pardoned.   Laws 1895, c. 342, authorized him to present a claim to the board of claims for the damages sustained by him by reason of his improper conviction and imprisonment, and authorized the board to award just damages.   *Held* that, if the act be construed as invalidating an unreversed judgment as to the guilt of claimant, it is void, since an exercise of judicial functions.

3. SAME—GRANTING OF NEW TRIAL BY LEGISLATURE. ·
   If the legislature did not intend to pass upon the correctness of the judgment of conviction, but only intended to confer jurisdiction on the board of claims to determine such question, the act cannot be sustained, since it would practically be a decision that the judgment of conviction was not final, and a permission for a new trial.

Appeal from court of claims.

Claim by John Roberts against the state of New York for illegal imprisonment, in pursuance of Laws 1895, c. 342.   From a judgment of $7,500 for claimant, both parties appeal.   Ordered that plaintiff's claim be dismissed.

On the 3d day of January, 1877, the plaintiff was arrested upon the charge of burglary, alleged to have been committed on the 22d day of December, 1876, at Long Island City, Queens county, N. Y.   He was afterwards indicted for the said alleged crime in the said county, tried at a court of oyer and terminer held therein, convicted, and sentenced to the state prison for the period of 20 years. After such sentence, he was imprisoned from the 26th day of January, 1877, to the 22d day of October, 1878, in the state prisons at Sing Sing and at Auburn, when he was pardoned by the governor of the state.   On the 15th day of April, 1895, he was restored to the rights of citizenship by Hon. Levi P. Morton.   No appeal from the said judgment was ever taken.

On the 17th day of April, 1895, chapter 342, Laws of the State of New York of that year, was enacted by the legislature, and contained the following provisions:

"Section 1. John Roberts is hereby authorized to present a claim to the board of claims for the damages sustained by him by reason of his improper conviction and imprisonment for the alleged crime of burglary, and the board of claims is hereby authorized to hear and pass upon said claim, and to award such compensation for the damages sustained by said John Roberts in consequence of such conviction and imprisonment as shall appear to be just and reasonable.

"Sec. 2. Either party may take an appeal to the court of appeals from any award made under authority of this act, if the amount in controversy exceeds five hundred dollars, provided such appeal be taken by service of a notice of appeal within thirty days after service of a copy of the award."

The plaintiff thereafter filed with the board of claims a statement of his demand against the state, amounting to $138,976.54, for damages alleged to have been sustained by him in the years 1877 and 1878 by reason of his conviction of the crime of burglary and imprisonment in the state prisons at Sing Sing and Auburn.   The parties thereafter appeared before the board of claims, the plaintiff being represented by counsel, and the state by the attorney general. Evidence was taken in regard to the alleged claim of the plaintiff, and a judg-

ment was directed in his favor for the sum of $7,500. Both parties appealed,—the state on the ground that the plaintiff was not legally entitled to any award, and the plaintiff for the reason that the award was insufficient.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Jos. P. McDonough (Geo. S. Coleman, of counsel), for claimant.
T. E. Hancock, Atty. Gen., for the State.

PUTNAM, J. It is proper, in the first instance, to consider the effect of the pardon granted to the plaintiff by Gov. Robinson, on the 21st day of October, 1878, and his subsequent restoration to the rights of citizenship by Gov. Morton, on the 15th day of April, 1895.

In the opinion rendered in U. S. v. Wilson, 7 Pet. 150–159, Marshall, J., uses the following language:

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed."

The same doctrine is stated in 17 Am. & Eng. Enc. Law, 317, and the authorities there cited.

In Eighmy v. People, 78 N. Y. 330, it was said that the pardon therein referred to was issued to the plaintiff in error because he was "a fit object of mercy"; and the pardon issued to the plaintiff on the 21st day of October, 1878, contained this recital: "And, he being represented to us as a fit subject of our mercy, therefore know ye, that we have pardoned," etc. The effect of a pardon of a convict is not to annul a judgment of conviction obtained against him, nor to determine that such judgment was erroneous or unjust. The pardon is an act of grace—of mercy—on the part of the executive, that in no way interferes with the validity or force of the judgment as far as it has been executed.

It was said in Ex parte Garland, 4 Wall., at page 380, referring to a pardon:

"If granted after conviction, it removes the penalties and disabilities, and restores him to his civil rights. It makes him, as it were, a new man, and gives him a new credit and capacity."

But this language must be understood to apply to a time subsequent to the granting of the pardon. As to acts done under a judgment of conviction before pardon, the adjudication remains in full force. The plaintiff could not have maintained an action for malicious prosecution against the party at whose complaint he was arrested, nor against the authorities of the state prison by whom he was confined for false imprisonment. They were protected by the judgment.

The following doctrine has been declared by the court of appeals:

"Notwithstanding the extensive language used in Ex parte Garland, supra, and In re Deming, 10 Johns. 232, and that which we used, there are limits to the effect of such a pardon. The word 'pardon' includes a remission of the offense, or of the penalties, forfeitures, or sentences growing out of it." Per Edmunds, J., People v. Potter, 1 Park. Cr. R. 51.

The pardoned man is relieved from all the consequences which the law has annexed to the commission of the public offense of which he has been pardoned, and attains new credit and capacity, as if he had never committed that public offense. In re Deming, supra. Yet the pardon does very little towards removing the other consequences which result from the crime. Per Bronson, J., Baum v. Clause, 5 Hill, 196. It does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment. It cannot take away the right of an informer to his part of a fine or penalty fixed by the law upon the commission of the offense (3 Inst. 238; Rowe v. State, 2 Bay, 565); nor the perfected right to a moiety of the penalty going to a custom house officer (U. S. v. Lancaster, 4 Wash. C. C. 64, Fed. Cas. No. 15,557); nor to the costs of the prosecution (Holliday v. People, 5 Gilman, 214; 2 Bay, supra; Ex parte McDonald, 2 Whart. 440; Rex v. Amery, 2 Term R. 515, 569; In re An Attorney, 86 N. Y. 563–569; In re Deming, supra; Baum v. Clause, supra).

In Knote v. U. S., 95 U. S. 153, the following language was used by Mr. Justice Field in his opinion:

"A pardon is an act of grace, by which an offender is released from the consequences of his offense, so far as such release is practicable and within control of the pardoning power or of officers under its direction. It releases the offender from all disabilities imposed by the offense, and restores to him all his civil rights. In contemplation of law, it so far blots out the offense that afterwards it cannot be imputed to him to prevent the assertion of his legal rights. It gives to him a new credit and capacity, and rehabilitates him to that extent in his former position. But it does not make amends for the past. It affords no relief for what has been suffered by the offender in his person by imprisonment, forced labor, or otherwise. It does not give compensation for what has been done or suffered, nor does it impose upon the government any obligation to give it. The offense being established by judicial proceedings, that which has been done or suffered while they were in force is presumed to have been rightfully done and justly suffered, and no satisfaction for it can be required."

We might refer to many other authorities to the same effect, but deem it unnecessary to do so. The pardon granted to the plaintiff did not have the retroactive effect of determining that the judgment of conviction was erroneous or unjust, or that his imprisonment thereunder was unlawful. It did not give to him a claim against the state for damages on account of his past imprisonment, or against the prosecutor who caused his arrest, or the public official who detained him in custody. In the language of Justice Field, above quoted:

"The offense being established by judicial proceedings, that which has been done or suffered while they were in force is presumed to have been rightfully done and justly suffered, and no satisfaction for it can be required."

The pardon, while relieving the plaintiff from future punishment and penalty in consequence of his conviction, did not affect the force or effect of the judgment as far as it had been executed. It is apparent, therefore, that, prior to the enactment of chapter 342 of the Laws of 1895, the plaintiff had no claim against the state. When the case came before the board of claims, on the 17th day of December, 1895, if a valid demand existed, it was one which was created by the act in question. If it should be held that the stat-

ute did not have that effect, this would have been the situation when the plaintiff appeared before the court below. By section 7 of chapter 205 of the Laws of 1883, as amended by chapter 60 of the Laws of 1884, that court had jurisdiction to audit all private claims against the state which had accrued within two years prior to the time when such claims might be filed. By chapter 342 of the Laws of 1895, the board of claims was given jurisdiction to pass upon the plaintiff's demand, although it had accrued more than two years before he filed his claim; but, unless it validated it, he had no lawful demand against the state.

In a criminal action brought by the people of the state, 18 years before, after a fair trial in the court of oyer and terminer, the plaintiff had been duly convicted of the crime of burglary. No appeal had been taken from the judgment, and it had remained 18 years unreversed and unassailed. If a claim in favor of the plaintiff was not created by the act of 1895, the court below would have been compelled to find that he had no demand against the state; that the judgment in the court below was final, and could not be disturbed; that the adjudication in that court that the plaintiff was guilty of the crime of burglary was conclusive as to his guilt; that the judgment was binding on the board of claims, and upon all other courts; that no claim could arise against the state in consequence of a judgment of conviction and an imprisonment thereunder, such judgment never having been reversed or assailed. Any other finding would have been clearly erroneous. The plaintiff, therefore, to sustain his contention, must rely on the act of 1895. That statute created his claim, if any existed, when the matter was presented to the board of claims. If it did not have the effect of validating the demand, it was ineffectual for any purpose. The conclusion of the court below cannot be sustained unless it can be held that the act of 1895 was a determination by the legislature that the conviction of the plaintiff in 1877 was improper, and that a claim existed in his favor against the state in consequence of the judgment of conviction and his imprisonment thereunder, which the legislature authorized the board of claims to audit and allow, or unless the act empowered the said board to determine whether or not the plaintiff was improperly convicted, and, if it found in his favor in that regard, to allow his claim of damages therefor.

But why was the conviction of the plaintiff improper? He was found guilty by the court of oyer and terminer of the crime of burglary. The conviction was not improper if he was in fact guilty. It could only have been held improper if, although found guilty, he was in fact innocent. If the act in question shall be deemed a legislative determination that his conviction was improper, the legislature, in its enactment, was compelled to practically annul a judgment duly rendered in the oyer and terminer in 1877. That judgment determined that the plaintiff was guilty. The legislature, by the act in question, in enacting that his conviction was improper, necessarily found that he was innocent. In doing so, it was compelled to pass upon a question of fact, to invalidate an

unreversed judgment fairly obtained, and thus to exercise judicial functions. There are cases holding that the legislature may, by subsequent legislation, authorize the allowance of meritorious claims against the state, not founded on any legal liability enforceable as against an individual by action, which it had original authority to provide for. Cole v. State, 102 N. Y. 48, 6 N. E. 277; O'Hara v. State, 112 N. Y. 146, 19 N. E. 659; McDougall v. State, 109 N. Y. 73, 16 N. E. 78. But the acts held within the power of the legislature in those authorities are not similar to the statute under consideration. It was not a recognition and allowance of a meritorious claim in favor of Mr. Roberts, nor authorized by any statute. When it was enacted, no semblance of a legal demand against the state of New York existed in his favor in consequence of his conviction of the crime of burglary in 1877, in the court of oyer and terminer of Queens county,—a court which, under the constitution of the state, was authorized to try him for the offense with which he was charged. The act created the claim of the plaintiff for damages if any existed, and, to create it as above stated, the legislature was compelled to review the judgment of conviction against the plaintiff made by the oyer and terminer, to determine that such conviction was improper, and therefore to exercise judicial functions. Under the constitution of the state, the senate and assembly are given legislative, but not judicial, functions. Courts are designated for the trial of criminal action, and the courts thus designated are the only tribunals having power to determine the guilt or innocence of an alleged criminal. No power is conferred on the legislature to pass upon the question of the guilt or innocence of those charged with crimes, or to designate any other tribunal to do so than those so named in the constitution.

In Black's Constitutional Law (page 78) it is said:

"Any act of the legislature which would undertake to determine questions of fact or law affecting the rights of persons or property would be judicial in its character, and therefore invalid. The legislature cannot lawfully, by statute, reverse or annul a judgment of a court, or grant a new trial, or otherwise reopen private controversies which have been finally settled by the courts or by lapse of time under the statute of limitations. Nor, as is generally held, can the legislature grant an appeal from a judgment in cases where the right to appeal has been lost. Declaratory statutes, the office of which is to declare what shall be taken to be the true meaning and intent of a law already in force, are valid if they are to apply only to controversies thereafter arising; but, in so far as they are intended to have a retrospective operation, that is an unlawful assumption of judicial power, and invalid. * * * Neither can the legislature direct the collection of a tax which has already been declared invalid by the courts, or direct that a criminal or class of criminals shall be discharged by the courts, or interfere with the sentence imposed by a court in a criminal case, by providing for a reduction of the term of imprisonment for good conduct."

To the same effect, see Cooley, Const. Lim. 104–106; Sinking-Fund Cases, 99 U. S. 700–761; 6 Am. & Eng. Enc. Law (2d Ed.) 1032, and notes; Parmelee v. Thompson, 7 Hill, 77–80.

We conclude that, if the statute in question did not have the effect of validating or creating the claim of the plaintiff presented to the court below, it was ineffectual; and a finding of that court cannot be sustained, as in that case no legal demand existed in

favor of the plaintiff against the state. If the statute shall be construed as an enactment that the plaintiff was innocent of the crime for which he had been tried and found guilty, that his conviction was improper, and therefore allowing a claim therefor to be presented to and allowed by the board of claims, it must be condemned as an act of the legislature beyond its power. If we assume that the legislature, by chapter 342, Laws 1895, did not intend to pass on the question of the guilt or innocence of the plaintiff of the crime for which he had been tried and convicted, or to determine whether or not the judgment theretofore rendered was improper, but to confer jurisdiction on the board of claims to determine those questions, that act cannot be sustained. Under such a construction of the statute, it must be held that the legislature, to confer jurisdiction on the board of claims to try the question of the plaintiff's guilt or innocence, was necessarily compelled to determine that the judgment theretofore rendered was not final in that regard; that such question could be retried. The law therefore operated as a practical annulment or reopening of such judgment, and deprived it of force and effect by providing for a new trial of the question determined by it. It is a well-settled doctrine that "the legislature has no power to invalidate a judgment duly rendered by a court of competent jurisdiction, either by a direct enactment, or indirectly by ignoring such judgment, and proceeding or requiring others to proceed in disregard of its provisions." 6 Am. & Eng. Enc. Law (2d Ed.) 1040; Cooley, Const. Lim. (6th Ed.) 112 et seq.; Griffin's Ex'r v. Cunningham, 20 Grat. 31–50, and authorities cited; De Chastellux v. Fairchild, 15 Pa. St. 18; McCabe v. Emerson, 18 Pa. St. 111; Menges v. Dentler, 33 Pa. St. 495.

The plaintiff was also tried in 1877, before a court of oyer and terminer,—a court created by the constitution of the state, to determine the question of his guilt or innocence. No power is conferred upon the legislature to pass upon the question determined by the oyer and terminer, or to authorize a court of its own selection to do so. The determination of the court designated by the constitution to try the plaintiff for the crime with which he was charged must be deemed final as to his guilt.

For the reasons above stated, and without considering other questions raised in the points submitted to us, we are of the opinion that the judgment rendered in this case cannot be sustained. It would be a matter of regret if we were compelled to hold that the enactment of chapter 342 of the Laws of 1895 was a proper exercise of legislative power. The doctrine has ever been maintained by our courts that a judgment obtained without fraud or duress, either in a civil or criminal court, is a final determination of the rights of the parties, and of the questions necessarily passed upon in its rendition. That that doctrine should be maintained is of the utmost importance. If the act under consideration can be sustained, we see no reason to doubt that, in any case where a criminal has been convicted of a crime and imprisoned, the legislature, on his being pardoned, or on the expiration of his term of im

prisonment, may retry the question of his guilt or innocence, or authorize a tribunal of its own selection to do so, and may thereupon sanction an allowance of a claim for damages against the state. The effect of holding that the legislature possesses this power would be deplorable. Judgments in criminal cases would only be final, effectual, and valid at the will of the legislature. We are satisfied that the legislature possesses no power to annul the final judgment of a court of competent jurisdiction, or to retry the questions necessarily passed upon in the rendition of such judgment, or to authorize any board or tribunal created by it to exercise such powers.

The judgment should be reversed, and the plaintiff's claim dismissed, with costs to the defendant. All concur.

LANDON, J. I concur, except that I express no opinion as to the power of the legislature to vacate a judgment of conviction of a crime obtained by the people against the accused. I do not think this act assumed to vacate the judgment.